**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Randall Everett CARPENTER,**
**Defendant-Appellant.**

**No. 73-1910.**

United States Court of Appeals,
Ninth Circuit.

May 7, 1974.

Charles M. Sevilla (argued), Federal Defenders of San Diego, San Diego, Cal., for defendant-appellant.

Michael E. Quinton, Asst. U. S. Atty. (argued), Harry D. Steward, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before CHAMBERS and HUFSTEDLER, Circuit Judges, and TAYLOR,* District Judge.

## OPINION

PER CURIAM:

The judgment of conviction for importing heroin in a body cavity is reversed. We find that there was probable cause to undertake a strip search, but on the particular record before us a doctor should have been summoned. *See* Schmerber v. California (1966), 384 U. S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908.

CHAMBERS, Circuit Judge (concurring):

I concur reluctantly.

Carpenter apparently was a "mule" carrying a package of heroin up his derrière in a condom, a rubber or plastic tube not invented for carrying narcotics.

When Carpenter disrobed at the border in a searching room, an inch or so

---

* Honorable Fred M. Taylor, Senior United States District Judge for the District of Idaho, sitting by designation.

of condom was protruding from the anus. The customs agent simply took hold of the end of the object and pulled it out. Inside the thing was a separate package about the size of a large finger. Eventually Carpenter would have pulled it out by hand or evacuated it with the help of his sphincter muscle.

Because the "hazard" of the method was only lightly touched on in the original hearing on the motion to suppress, we remanded the case to the district court to hold a hearing on the hazard of the method used.

At the district court hearing, the defense produced a proctologist who was very positive that a doctor should have been summoned to perform the operation. He speaks of using instruments. Then the government produced the doctor who is ordinarily called to remove such objects from prospective defendants. On direct examination the latter didn't object to the method used. On cross-examination, in sum, he seems to have agreed with the defense. And, even he talks of using instruments.

I would have thought that on this remand the district court could have held that on the government's doctor's direct testimony the method of extraction was safe. But the district court finds that the method used should not have been used and will not be repeated. Then the court relies on the fact that the procedure did no harm to Carpenter and so the seizure was reasonable.

I regard the case as one simply where the defense outmaneuvered an overworked prosecutor, and of no precedential value except on a similar record.

I think we deal with a matter where one can use his common sense as a layman.

I remember once taking a written instrument to a handwriting expert. My contention in the case was that the document was a forgery. The expert looked at it and said, "You are right. It is a forgery." I was happy. Then he added, "But I can't testify that it is." I was

crushed. Then, I weakly queried, "Why not?" He replied, "Because you or anybody else can see that is a forgery. We only testify when you can't see the forgery with your naked eye."

Carpenter's case is such a case. When the condom is wholly secreted, the anus and area above should be dilated for removal. It is a ticklish thing—the constant danger that the operator will puncture the condom is always there. So the wise thing is to first pull, if there is a loose end protruding from the body, assuming the prisoner is not fighting back. Here Carpenter didn't help much, but he didn't resist.

The customs officer was entitled to assume the probable—that the package was one that went in without much trouble and would come out the same way.

The closest analogy is the splinter. If it has a good end sticking outside the skin, one takes hold and pulls it out. One does not dilate.

Except to let the guilty Carpenter go, the decision will cause little harm in San Diego. Doctors will be summoned without real need. So, we shall have no similar case again from San Diego.

But if Carpenter is found at some remote place, the perils of leaving the contraption in will far outweigh a simple removal.

When this opinion has been filed, I shall go out and ask my doctor what he would have done. If he does not say, "I would have pulled it out," I shall ask the government's forgiveness.

FRED M. TAYLOR, District Judge (concurring):

I am constrained to concur in reversing the conviction of appellant only because of the record made on remand of the case to the district court for a hearing in regard to the hazard of the method used in extracting the condom from the body of appellant. It is unfortunate and regrettable that because we must accept the idealistic testimony of medical experts, instead of relying on ordi-

nary common sense, that the guilty appellant must be set free to again traffic in narcotics.

On the basis of the original record, prior to remand, I would have been in favor of affirming the conviction. It clearly appears from that record that the condom containing the heroin was removed by the simple process of the inspector taking hold of and pulling the protruding end of the condom and with the cooperation of appellant the condom was removed without any intrusion of the cavity and without any injury, harm or significant pain to appellant.